**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KELECHUKWU OSUJI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 4758 |
| v. | ) | |
| | ) | Paul E. Plunkett, Senior Judge |
| COUNTRYWIDE HOME LOANS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Kelechukwu Osuji ("Plaintiff") has filed a four-count complaint against Countrywide Home

Loans, Inc. ("Defendant") for breach of contract, false advertising, fraud and misrepresentation, and

breach of good faith and fair dealing. The lawsuit was originally filed in Illinois' state court and

based on diversity was removed to the Northern District of Illinois. Before us are Plaintiff's and

Defendant's Federal Rule of Civil Procedure ("Rule") 56 cross-motions for summary judgment. For

the reasons stated below, we deny Plaintiff's motion and grant in part and deny in part Defendant's

motion for summary judgement.

## Background

Countrywide Home Loans is a mortgage lending company based out of New York and

California. (Pl.'s Stmt. ¶ 1.) Plaintiff resides in Illinois. According to Plaintiff's statement of facts,

after receiving several solicitations to refinance his mortgage on September 3, 2003, Plaintiff formally applied for the program and submitted the $100 application fee. (*Id.* ¶ 2, 3.) Plaintiff believed that the completed application constituted an enforceable agreement ("Agreement") and that he was not required to provide a new credit score, a new appraisal fee, a new asset verification, or new income documentation in order to refinance. (*Id.* ¶ 3, 4.) The Agreement locked in an interest rate of six percent for a fifteen-year term, and this lock-in rate was valid for acceptance until October 20, 2003. (*Id.* ¶ 5.) Plaintiff completed the application process but never received approval to the "Fast-track Refinancing Program."

On November 12, 2003, Defendant sent a notice to Plaintiff asking him to complete another application. Although Plaintiff believed he had completed his application in September and that he had already been approved for the loan, he again submitted an application. After completing the November application, Plaintiff's closing date was cancelled and his credit was checked. On March 3, 2004, Plaintiff contacted Defendant's sales agent, Anna Copeland, to inform her that Defendant was not acting in conformity with the Agreement because it had not provided his refinancing as promised. (*Id.* ¶ 8.) Copeland explained that because there had been a misunderstanding with Plaintiff's loan approval, she would again lock Plaintiff in to the six percent interest rate that had been previously offered.

Having not received the approval or the loan documents, Plaintiff notified Copeland on March 17, 2004 and again on May 27, 2004. Plaintiff threatened to take legal action if he did not obtain the refinancing. (*Id.* ¶ 12.) To date, according to Plaintiff, Countrywide has failed to comply with the Agreement because it has refused to offer Plaintiff fast-track refinancing.

-2-

In its statement of facts, Defendant states that the alleged Agreement was merely an application packet, and it, alone, lacks the essential terms to be a contract. Defendant advertised to Plaintiff in his monthly billing statement saying "[y]ou may qualify for Fastrack Refinancing" and "this is not a commitment to lend." Although Plaintiff acknowledges reading that specific language in the advertisement, he believed the application to be enforceable and decided to enter into the Agreement only after Copeland telephoned him and explained the loan. (Def.'s Stmt. ¶¶ 13, 14, 15.) Defendant received a refinancing application from Plaintiff in November 2003; however, Plaintiff never qualified for the fast track program. On January 21, 2004, Defendant sent a letter to Plaintiff explaining that Plaintiff's refinancing application could not be approved because he had a high income-to-debt income ratio. (Id. ¶ 8.) Plaintiff's claims also arise out of Defendant erroneously posting a debit on Plaintiff's mortgage statement. However, after realizing the error, Defendant removed it from Plaintiff's record. (Id. ¶ 16.) Plaintiff seeks almost fourteen million dollars in compensatory and punitive damages.

## Legal Standard

In order for a party to prevail on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we may not weigh the evidence or make any credibility determinations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the nonmoving party. *Payne v. Pauley,* 337 F.3d

-3-

767, 770 (7th Cir. 2003). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Additionally, where "undisputed facts give rise to disputed inferences," summary judgment is not appropriate. *Harley-Davidson Motor Co. v. Powersports, Inc.,* 319 F.3d 973, 989 (7th Cir. 2003) (ruling that "the choice between reasonable inferences from facts is a function of the fact-finder"); *see also Ramirez v. Nutrasweet Co.,* 1997 U.S. Dist. Lexis 17111, at *7 (N.D. Ill. Oct. 27, 1997) ("if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted") (citing *O'Connor v. Chicago Transit Auth.,* 985 F.2d 1366 (7th Cir. 1993)). Initially, the moving party must inform the court of the basis for the motion, but it is then the non-moving party's obligation to present specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e).

## Discussion

First, Plaintiff claims Defendant has breached their contract. Under Illinois law, in order to establish a breach of contract claim a plaintiff must show: "(1) an offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damage resulting from the breach." *Barille v. Sears Roebuck and Co.,* 289 Ill. App. 3d 171, 175 (1997); *see also Elson v. State Farm Fire & Cas. Co.,* 295 Ill. App. 3d 1, 6 (1998); *Shubert v. Federal Express Corp.,* 306 Ill. App. 3d 1056, 1059 (1st Dist.1999); *Burrell v. City of Mattoon,* 378 F.3d 642, 651 (7th Cir. 2004). To be enforceable, an agreement must be sufficiently definite so that the terms of

-4-

the agreement are reasonably certain and able to be determined. *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 979, 684 N.E.2d 816 (1997).

To begin the breach of contract analysis, there must be evidence of a clear, unambiguous and fully integrated contract. *Krautsack v. Anderson*, 329 Ill. App. 3d 666, 681 (2002) (stating that whether a contract is integrated is a matter of law determined by the trial court). To determine this, we may only consider the writing itself and must determine whether there was an intent to embody a complete agreement and to "import[] a legal obligation." *Eichengreen v. Rollins, Inc.*, 325 Ill. App. 3d 517, 523 (2001) (internal citations omitted). In Illinois, we observe the "four corners rule," which means that when a contract is "reduced to writing, [it] must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) (quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457 (Ill. 1999) (other citations omitted.) Illinois law also provides that extrinsic evidence may not be introduced to show that the integrated written agreement differs from what it actually says. *Id.; Joy v. Hay Group*, Inc., 403 F.3d 875 , 878 (7th 2005); *Davis*, 396 F.3d at 878.9 (noting that any evidence of prior or contemporaneous agreements that is introduced to alter or contradict that written agreement will not be admissible). But, when an integrated contract is ambiguous as to its terms, then extrinsic evidence is permitted to explain the terms of the contract. *Id; Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984); *Quake Constr. Inc. v. Am. Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990).

However, before reaching the interpretation phase, we must first ascertain whether there was offer, acceptance and a meeting of the minds even to establish the existence contract. "There must

-5-

be mutual assent, or a 'meeting of the minds,' as to the essential terms of the contract." *LM INS. Corp. v. Sourceone Group*, 2006 U.S. Dist. LEXIS 54097 *27, No. 04 C 618 (July 18, 2006) (citing *Acad. Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). When the facts are undisputed, this determination is a question of law. *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1102 (7th Cir. 1997). When the facts are disputed, however, then it is for the trier of fact to assess whether there was a meeting of the minds. *Mulliken v. Lewis*, 245 Ill. App. 3d 512, 516 (1993).

Plaintiff asserts that the application and its terms, combined with Copeland's oral assurances, embody a contract. Defendant argues that, other than to guarantee him a six percent interest rate, the application does not constitute an enforceable agreement by way of the application. Defendant maintains the purported Agreement is simply a residential loan application that informs the applicant of the interest rate, disclosures, and other important information. We believe the writings indicate that the application is not a commitment to lend. The loan application unambiguously states that it is a "loan request," that Copeland will "send [Plaintiff's] application to Countrywide [who] will be processing [the] loan," that "you may qualify," "approval is subject to satisfactory appraisal and title review and no change in financial condition," "this is not a commitment to lend," and that the $100 payment is an application fee. At the conclusion of the application and six percent lock in agreement it also states:

[t]his is not a loan approval or a loan commitment. Any program described above may not be available for Applicant. The Lender will not close the loan unless, among other things, it approves the Applicant's loan application, including employment, income, assets, credit and property, and all conditions of such approval are satisfied prior to loan closing.

(Pl.'s Stmt Facts Ex. B, C, D, E, O.)

-6-

The disclaimer shows us that Defendant did not intend to make a binding offer through the application.

However, some of the language in the "application wrap up sheet" that was provided to Plaintiff presents ambiguity that we are unable to resolve. The wrap up sheet is a transcript of the phone conversation between Copeland and Plaintiff and it reviews the terms of the refinance loan. It uses language, such as, "applicant's loan" and "loan will fund" which imply that a new loan already exists and that it will inevitably fund. The refinance wrap up sheet also states that the "terms of your refinance loan," "your new loan," and also discusses specific closing costs noting "your loan will be." Furthermore, the end of the wrap up sheet informs Plaintiff that:

> What will happen next is I am going to send your application to the Countrywide branch that will be processing your loan. You will receive a packageg with a "RETURN BY" date. IT is very important that you sign and return the package by that date. It is very important that you SIGN AND RETURN the package by that date. If you have any questions, or if you are going to be delayed, or you have not received your package in 10 working days, please call the branch or me. Please continue to make your mortgage payment as normal until you close on your new loan.

This affirmative language reasonably led Plaintiff to believe that upon receipt of the wrap up sheet, he may have been approved for the refinancing. Had the application contained discretionary language such as the "terms of the loan *for which you applied*," "your new loan, *if it is approved*," "your loan *may* be," or "*if you are approved*, a package will come and you will close on your new loan," we would be able to definitively state that there was no contract. Here, however, that is not the case. Each party construed the language differently and because there is not an agreement as to the factual question of whether a contract existed, we believe that summary judgement is not appropriate. The questions of whether there was a meeting of the minds and whether a contract

-7-

existed is better suited for the trier of fact to answer and thus, as to Count I, both Plaintiff's and Defendant's motions for summary judgment are denied.

In Count II, Plaintiff alleges false advertisement. Defendant argues that a cause of action for false advertising only exists under Illinois law in the trademark context under the Lanham Act. Section 43(a) of the Lanham Act reaches a wide range of unfair competitive practices. Its original intent was to address trademark infringement, but its scope was broadened in 1988 to encompass unfair competition. *Truck Components, Inc. v. K-H Corp.,* 776 F. Supp. 405, 408 (N.D. Ill. 1991). The current version of § 43(a) states:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> . . . .
>
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (1998).

To state a claim for false advertising under § 43(a), Plaintiff must show that Defendant's advertisements were: "(1) false and misleading, (2) actually or likely to deceive a substantial segment of their audience, (3) material in their effects on purchasing decisions, (4) touting goods that entered interstate commerce, and (5) actually or likely to injure [Plaintiff]". *Truck Components, Inc.,* 776 F. Supp. at 408.

-8-

Defendant contends that Plaintiff has failed to properly plead his claim, stating he has not established that Countrywide's solicitations were false; that Plaintiff or others who received the mailing relied to their detriment on the ads, or that any injury occurred. Defendant asserts that the solicitations only affirmed that Plaintiff *may* qualify for the program and that the disclaimers were conspicuously placed to inform a consumer that the application and advertisements were not a commitment to lend. Defendant also claims that because Plaintiff only acted after he received the telephone solicitation from Copeland, that the written communication could not be considered the catalyst that made him act. Moreover, Defendant states that because Plaintiff has not provided support to establish his damages, the final prong has also not been satisfied. Osuji claims that Defendant's false statement was telling him he would be approved for the loan without having to re-qualify, but then requiring him to provide new financial information in order to get approved. Plaintiff contends his reliance on Defendant's alleged promise resulted in injury.

We believe that Plaintiff has not provided the support necessary to sustain his claim. He has not pointed to language that is shown to be deceptive or false. Defendant, on the other hand, has presented documents to show it fully disclosed that applicants may not be eligible and may have to provide financial information to determine whether the fast track program was available for them. In fact, in the application and the solicitation materials, it clearly states that the application is a "loan request," "you may qualify," the application is sent for processing and that "approval is subject to satisfactory appraisal and title review and no change in financial condition." (Pl.'s Stmt Facts Ex. B, C.) The interest rate lock-in agreement also provides that "[t]his is not a loan approval or a loan commitment. Any program described above may not be available for Applicant. The Lender will not close the loan unless, among other things, it approves the Applicant's loan application, including

-9-

employment, income, assets, credit and property, and all conditions of such approval are satisfied prior to loan closing." (Pl.'s Stmt Facts Ex. O.)

Further, Plaintiff has failed to produce any evidence that proves the advertisements actually deceived or confused any other consumers or that the solicitations materially influenced consumers banking decisions. Finally, Plaintiff does not point to any evidence that his application and reliance thereon is connected to the $1,000,000 damages and $3,000,000 punitive damages that Plaintiff seeks for Count II. Because Plaintiff fails to sufficiently establish his false advertising claim, Defendant's motion for summary judgment as to Count II is granted.

In Count III, Plaintiff complains of misrepresentation and fraud. Plaintiff's claim is based upon his allegation that Countrywide fraudulently stated Plaintiff would not have to re-qualify for refinancing, but later required re-qualification. We treat the claim as one for fraudulent misrepresentation which will only survive if Plaintiff shows that: (1) Defendant made a material statement of fact that it knew or believed to be untrue; (2) Defendant intended to induce Plaintiff to rely on the statement; (3) Plaintiff's reliance was justifiable; and (4) Plaintiff was damaged as a result. *Cangemi v. Advocate S. Suburban Hosp.*, 364 Ill. App. 3d 446, 468 (March 6, 2006); *Miller v. Lewis*, 381 F. Supp. 2d 773, 789 (N.D. Ill. 2005).

Plaintiff meets the same impasse as he did in his false advertising claim. Plaintiff has again failed to present evidence to show the falsity of Defendant's solicitations or that Countrywide knew or believed its statements were untrue. Plaintiff also offers no proof the Defendant intended reliance was justifiable and that Plaintiff sustained damages caused by the reliance.

Also in this count, Plaintiff asserts that Defendant defrauded him because it wrongly posted a debit on his statement. Defendant has removed the contested amount, but Plaintiff maintains the

-10-

disputed fee would still be on his statement had he not filed suit. Plaintiff offers no evidence to show that Defendants knowingly posted the wrong amount to his statement. Plaintiff only alleges that he informed Defendant of the mistake and he offers no support for the $5,000,000 damages plus $5,000,000 punitive damages he claims for this count. Because he has not established the elements of his, Defendant's motion for summary judgment, as to Count III, is also granted.

In Count IV, Plaintiff alleges a breach of Good Faith and Fair Dealing. Section 1-203 of the UCC provides that "every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." 810 ILCS 5/1-203. "Good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." 810 ILCS 5/2-103(b). The implied duty of good faith and fair dealing expects that the parties fulfill their obligations to the contract "with proper motive" and in good faith. *Citicorp Sav. v. Rucker*, 295 Ill. App. 3d 801, 808 (Ill. App. Ct. 1998)).

Defendant argues that under Illinois law, the covenant of good faith and fair dealing does not, itself, impose separate duties upon the parties to a contract. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). Instead, the covenant merely "guides the construction of the explicit terms in the agreement." *Id.* A claim for breach of good faith and fair dealing does not create its own cause of action and may not stand alone as a claim. *Echo, Inc. v. Whistson Co.*, 121 F.3d 1099, 1106 (7th Cir. 1997).

Here, Plaintiff claims that because he has a business relationship with Defendant and that because the wrongly posted a debit on his account remained on his statement until he filed suit, Defendant has breached its duty of good faith and fair dealing and caused Plaintiff's attorney's fees and costs. We disagree, the cause of action, by itself does not exist. That duty is one that is implicit

-11-

in all contracts and under Illinois, is not recognized as its own actionable claim. Moreover, Defendant has removed the debit from Plaintiff's statement and thus, as to Count IV, Defendant's motion for summary judgment is granted.

## Conclusion

For the reasons set forth above, Defendant's Rule 56 motion for summary judgment as to Count II, Count III, and Count IV is granted. Both Plaintiff's and Defendant's motions for summary judgment as to Count I are denied.

ENTER:

**UNITED STATES DISTRICT JUDGE**

DATED: AUG 1 7 2006